UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

GINA L. BIANCHI, an individual,

                              Plaintiff,

     -against-                           Civil Case No.:  1:18-cv-619
                                            (GLS/DJS)

MICHAEL C. GREEN, JOHN CZAJKA,
KAREN DAVIS, JOHN DOE #1, JOHN DOE #2,
JOHN DOE #3, JOHN DOE #4, JANE ROE #1,
JANE ROE #2, JANE ROE #3, AND JANE ROE # 4,

                              Defendants.
_____

## PLAINTIFF'S MEMORANDUM OF LAW
## IN RESPONSE TO DEFENDANTS GREEN AND CZAJKA'S
## MOTION FOR SUMMARY JUDGMENT
_____

Dated:  June 27, 2022              Bailey, Johnson & Peck, P.C.


                            By:  *Crystal R. Peck*
                                   John W. Bailey – Bar Roll No.: 101069
                                   Crystal R. Peck – Bar Roll No.: 514375
                            *Attorneys for Plaintiff, Gina L. Bianchi*
                            5 Pine West Plaza, Suite 507
                            Washington Avenue Extension
                            Albany, New York 12205
                            (518) 456-0082

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................1

ARGUMENT ........................................................................................1

POINT I:     THERE ARE MATERIAL QUESTIONS OF FACT IN DISPUTE PRECLUDING SUMMARY JUDGMENT ON PLAINTIFF'S FIRST AMENDMENT CLAIM OF RETALIATION ...........................................2

    A.    Plaintiff Engaged in Protected Speech.............................2

        i.    Plaintiff's testimony was not a "report" required under Executive Law §55(1)..........................................3

        ii.    Plaintiff's testimony to the IG did not related to the performance of her official duties.......................................5

    B.    Plaintiff's Termination Was Not Justified ......................8

    C.    The Record Establishes that Defendant Czajka was Personally Involved in Violating Plaintiff's Constitutional Rights.................10

POINT II:     DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY 11

    A.    Plaintiff's Right to be Free From Retaliation for Providing Sworn Testimony Was Clearly Established ...............................................12

    B.    Viewing the Record Most Favorably to Plaintiff, Questions of Facts Preclude Finding that Defendants Actions were Objectively Reasonable ..................................................................................13

POINT III:     THERE ARE MATERIAL QUESTIONS OF FACT WHICH PRECLUDE DISMISSAL OF PLAINTIFF'S HUMAN RIGHTS LAW CLAIMS ..................................................................................15

    A.    Plaintiff Engaged in Protected Activity under the Human Rights Law and Equal Protection Clause and Defendants Terminated Her for that Activity..........................................................................16

        i.    Plaintiff engaged in protected activity ..............................16

        ii.    Plaintiff was terminated because she provided testimony of agism and gender harassment and discrimination to the OIG ................................................................................17

    B.    Defendants Can Be Held Individually Liable under the Human Rights Law for Retaliation............................................................19

i

i.  *Doe v. Bloomberg* did not remove individual liability under the NYS HRL for supervisors who are actively involved in retaliation and discrimination ...............................................19

ii.  Defendant Green is individually liable for retaliation under NYS HRL 296(1) and (7) ...................................................21

iii.  Defendants are also personally liable under NYS HRL 296(7)...............................................................................23

POINT IV:   DEFENDANT CZAJKA'S REQUEST FOR ATTORNEY'S FEES IS DESIGNED TO INTIMIDATE AND CHILL FREE SPEECH AND SHOULD BE DENIED ...........................................................................24

CONCLUSION.....................................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

Page(s)

<u>Federal Cases</u>

*Agosto v. New York City Dept. of Educ.*,
   982 F.3d 86 (2d Cir. 2020) ................................................................................. 3
*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ........................................................................................... 1
*Belton v. Borg & Ide Imaging, P.C.*,
   2022 WL 398824 (W.D.N.Y. Feb. 10, 2022) .................................................... 25
*Caruso v City of New York*,
   973 F Supp 2d 430 (S.D.N.Y. 2013) ................................................................... 7
*Christiansburg Garment Co.*,
   434 U.S. ............................................................................................................ 25
*Cruz v. Coach Stores. Inc.*,
   202 F.3d 560 (2d Cir. 2000) .............................................................................. 23
*D'Olimpio v. Crisafi*,
   462 Fed.Appx. 79 (2d Cir. 2012)...................................................................... 3, 4
*Feingold v. New York*,
   366 F.3d 138 (2d Cir. 2004) ........................................................ 15, 16, 21, 22
*Franchitti v. Bloomberg, L.P.*,
   411 F. Supp. 2d 466 (S.D.N.Y. 2006) .......................................................... 24, 25
*Friederick v Passfeed, Inc*
   21-CV-2066 (RA), 2022 WL 992798 (S.D.N.Y. Mar. 31, 2022)............... 15, 21, 22, 23
*Garcetti v. Ceballos*,
   547 U.S. 410, 126 S.Ct. 1951 (2006) .................................................................. 2
*Gordon v. New York City Board of Education*,
   232 F.3d 111 (2d Cir. 2000) .............................................................................. 17
*Gorman–Bakos v. Cornell Co-Op Ext. of Schenectady County*,
   252 F.3d 545, (2d Cir. 2001) ............................................................................. 13
*Harlow*,
   457 U.S. 102 S.Ct. 2727 ................................................................................... 11
*Harrison v. SUNY Downstate Medical Center*,
   2018 WL 4055278 (E.D.N.Y. 2018) ................................................................. 15
*Hawkins v. Steingut*,
   829 F.2d 317 (2d Cir.1987) .............................................................................. 12
*Hicks v. Baines*,
   593 F.3d 159 (2d Cir. 2010) .............................................................................. 16
*In re Bennett Funding Group, Inc.*,
   220 B.R. 743 (Bankr. N.D.N.Y. 1997) .............................................................. 24
*In re: Kern*,
   567 B.R. 17 (Bankr. E.D.N.Y. 2017) ................................................................ 24
*Kwan v. Andalex Group LLC*,
   737 F.3d 834 (2d Cir. 2013) ......................................................................... 17, 19
*Lane v. Franks*,
   134 S.Ct. 2369 (2014)................................................................................. 2, 3, 7

iii

*LeBlanc-Sternberg v. Fletcher*,
   143 F.3d 765 (2d Cir. 1998) ........................................................................... 24

*Lore v. City of New York*,
   583 F.Supp.2d 345 (N.D.N.Y. 2008).............................................................. 15

*Malena Victoria's Secret Direct, LLC*,
   886 F Supp 2d 349 (S.D.N.Y. 2012) .............................................................. 21

*Mandell v. Count of Suffolk*,
   316 F.3d 368 (2d Cir. 2003) ...................................................................... 11, 14

*Matthews v. City of New York*,
   779 F.3d 167 (2d Cir. 2015) ................................................................. 6, 12, 13

*Nagle v. Marron*,
   663 F.3d 100 (2d Cir. 2011) ........................................................................... 11

*Parker v. Sony Pictures Ent., Inc.*,
   260 F.3d 100 (2d Cir. 2001) ........................................................................... 24

*Pickering v. Brd. of Educ.*,
   391 U.S. 563 (1968) ........................................................................................ 12

*Reilly v. City of Atlantic City*,
   532 F.3d 216 (3d Cir. 2008) ............................................................................. 4

*Richardson v Pratcher*,
   48 F Supp 3d 651 (S.D.N.Y. 2014) ........................................................... 12, 13

*Rockland Exposition, Inc. v. All. of Auto. Serv. Providers of New Jersey*,
   894 F.Supp.2d 288 (S.D.N.Y. 2012) .............................................................. 23

*Rodriguez v. City of New York*,
   72 F.3d 1051 (2d Cir. 1995) ............................................................................. 1

*Roth v. United States*,
   354 U.S. 476 (1957) .......................................................................................... 2

*Rusk v. NYS Thruway Auth.*,
   37 F.Supp.3d 578 (W.D.N.Y. 2014).............................................................. 3, 4

*Shakur v. Selsky*,
   391 F.3d 106 (2d Cir. 2004) ........................................................................... 24

*Sista v. CSC Ixis N. Am., Inc.*,
   445 F.3d 161 (2d Cir. 2006) ........................................................................... 24

*Stajic v. City of New York*,
   2018 WL 4636829 (S.D.N.Y. 2018) .............................................................. 13

*Tomka v. Seiler Corp.*,
   66 F.3d 1295 (2d Cir. 1995) ........................................................................... 15

*U.S. v. New York City Dept. of Educ.*,
   407 F.Supp.3d 365 (S.D.N.Y. 2018) ............................................... 16, 17, 19

*Van Alstyne v. Ackerley Grp., Inc.*,
   8 Fed. App'x 147 (2d Cir. 2001)..................................................................... 24

*Waters v. Churchill*,
   511 U.S. 661, 114 S.Ct. 1878 (1994) ............................................................... 2


State Cases

36 N.Y.3d 450 (2021) ............................................................................. 19, 20, 21, 23

iv

<u>Federal Statutes</u>

42 USC 1988(b) ....................................................................................................................... 24

<u>State Statutes</u>

Executive Law §55(1) ........................................................................................................... 1, 3
N.Y. Exec. Law § 292(5) ........................................................................................................ 15
N.Y. Exec. Law § 296(6) ................................................................................................... 15, 21
NYS HRL 296(1) and (7) ...................................................................................................... 2, 21
NYSHRL §296(7) ......................................................................................................... 15, 23, 24
NYSHRL §297(7) .................................................................................................................... 15
Section 55 ...................................................................................................................... 3, 4, 12

<u>Federal Rules</u>

Fed. R. Civ. P. 56(a) ............................................................................................................... 1
Rule 15(b) of the Federal Rules of Civil Procedure .................................................................. 23

## PRELIMINARY STATEMENT

Plaintiff Gina L. Bianchi (hereinafter "Plaintiff") submits the following Memorandum of Law in opposition to Defendants Green and Czajka's Motion for Summary Judgment.

As set forth in Plaintiff's Response to Defendants' Statement of Materials Facts and Plaintiffs' counterstatement, the record clearly demonstrates that there are triable issues of fact precluding summary judgment. Ultimately, Plaintiff testified before the OIG on matters of public concern, raised issues regarding gender discrimination, workplace violence, retaliation, and ageism in OFS and discussed with the OIG how complaints of that conduct were being ignored by DCJS executive management. Contrary to Defendants arguments, Plaintiff' testimony before the OIG was not mandated, it was not part of her professional duties. Indeed, Defendants biggest complaint regarding her testimony is that she "volunteered" opinions that placed DCJS in a negative light. Defendants violated Plaintiff's clearly established right and broke a trust she had in the State and Defendant Green as the head of DCJS that she would not be retaliated against for providing sworn testimony to the OIG.  As such, Defendants' Motion should be denied.

## ARGUMENT

Summary judgment should be granted only if the Court determines that there is no genuine dispute as to any material fact concerning the non-movant's claims or defenses and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must examine the facts in the light most favorable to the non-moving party, resolving all ambiguities and drawing all factual inferences in favor of the non-moving party.  *Rodriguez v. City of New York*, 72 F.3d 1051,1061 (2d Cir. 1995). The burden is on the moving party to show that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**POINT I: THERE ARE MATERIAL QUESTIONS OF FACT IN DISPUTE PRECLUDING SUMMARY JUDGMENT ON PLAINTIFF'S FIRST AMENDMENT CLAIM OF RETALIATION**

The U.S. Supreme Court has long recognized that "speech by citizens on matters of public concern lies at the heart of the First Amendment, which was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people." *Lane v. Franks*, 134 S.Ct. 2369 (2014), *quoting Roth v. United States*, 354 U.S. 476, 484 (1957). The Supreme Court has further acknowledged that "there is considerable value, moreover, in encouraging, rather than inhibiting, speech by public employees for government employees are often in the best position to know what ails the agencies for which they work." *Id., quoting Waters v. Churchill*, 511 U.S. 661, 674, 114 S.Ct. 1878 (1994). With that said, the Supreme Court has also recognized that government employers need a "significant degree of control over their employees, words and actions." *Garcetti v. Ceballos*, 547 U.S. 410, 418, 126 S.Ct. 1951, 1959 (2006). Therefore, a balancing test is required to determine whether a public employee's speech enjoys First Amendment protections. *Lane v. Franks*, 134 S.Ct. 2369 (2014).

**A. Plaintiff Engaged in Protected Speech.**

Whether speech is a matter of public concern is not a bright line rule, but rather, turns on the "content, form, and context" of the speech. *Lane v. Franks*, 573 U.S. 228, 241 (2014), *quoting Connick v. Myers*, 461 U.S.138, 147-48 (1983). Further, "truthful testimony under oath by public employee outside the scope of her ordinary job duties is speech as a citizen for First Amendment purposes. That is so even when the testimony relates to her public employment or concerns information learned during that employment." *Lane*, 573 U.S. at 238. Indeed, it is the obligations of an employee are "distinct and independent" from those of a citizen to testify truthfully and it is that obligation to tell that truth that "renders sworn testimony speech as a

citizen and sets it apart from speech made purely in the capacity of an employee.'" *Lane*, 573 U.S. at 239.

>    i.   *Plaintiff's testimony was not a "report" required under Executive Law §55(1).*

Defendants argue that because Plaintiff is a State[1] employee and she provided testimony to the New York State Inspector General that, as a matter of law, the Court must find that Plaintiff's testimony was pursuant to her employment duties. Green MOL Point I(A). However, the analysis is not as simple as Defendants argue nor do the cases cited by Defendants involve analogous circumstances. See generally, *D'Olimpio v. Crisafi*, 462 Fed.Appx. 79 (2d Cir. 2012); *Rusk v. NYS Thruway Auth.,* 37 F.Supp.3d 578, 581-82 (W.D.N.Y. 2014); *Agosto v. New York City Dept. of Educ.*, 982 F.3d 86 (2d Cir. 2020). In both *D'Olimpio* and *Rusk*, the plaintiffs independently filed complaints with the IG regarding matters of corruption, fraud, criminal misconduct, and abuse of office within their agencies. *See*, *D'Olimpio*, 462 Fed.Appx. at 80 (complaint involved violations by police officer of suspects' constitutional rights, intentionally misrepresenting employment credentials, working other jobs while on state time, and personal use of state equipment); *Rusk*, 37 F.Supp.3d at 582 (complaint involved state employee receiving a salary that was not being earned).

There is no dispute that Plaintiff did not file a complaint with the IG. The IG investigation began with an ███████████████████████████████████████ ██████ Peck Decl. Ex. "N". Plaintiff did not file that complaint, ████████████████████ ███████████████████████████████. Peck Decl. Ex. "M" 42:6-9. These facts are not in dispute.

The IG's powers and jurisdiction are derived from the New York State Executive Law. Peck Decl. Ex. "G", p.10:6-12; NYS Exec. L. Art. 4-A. Section 55 of NYS Executive Law sets

---

[1] All references to "State" herein refer to the State of New York.

3

forth the responsibilities of State officers and employees with respect to reports required to be made to the Inspector General. NYS Exec. L. §55. The statute provides that every State employee must report to the IG any information concerning "corruption, fraud, criminal activity, conflicts of interest or abuse by another state officer or employee relating to his or her office or employment." *Id.* Defendants submit that the statute encompasses any and all employee misconduct and that, as such, to the extent that Plaintiff provided any testimony regarding employee misconduct within DCJS she was thus testifying pursuant to §55 of the Executive Law. Defendants rely heavily on ███████████████ that in his view employee misconduct fell within the subject matter jurisdiction of the statute. However, ███████ ████████████████████████████████████████████████. Peck Decl. Ex. "G", 15:10-18. Indeed, there is no legal precedent for a finding that Executive Law §55 encompasses employee misconduct generally. Rather, the few courts that have reviewed this issue have been very careful to refer to the specific subject matters enumerated in the statute when evaluating First Amendment claims and IG testimony. See, *Rusk*, 37 F.Supp.3d at 597 (quoting Executive Law §55); *D'Olimpio*, 462 Fed.Appx at 80 (specifically characterizing plaintiff's report as relating to "crime", "fraud", "corruption", and "abuse of office").

Secondary to this argument, Defendants place great emphasis on statements made by Plaintiff that ███████████████████████████████████████████████. However, the motivation behind Plaintiff's initial appearance before the IG is not dispositive to the question of whether her speech is protected. *See*, *Caraccilo v. Vil. of Seneca Falls,* 582 F.Supp.390, 412 (W.D.N.Y. 2008) *quoting Reilly v. City of Atlantic City,* 532 F.3d 216 (3d Cir. 2008)("That an employee's official responsibilities provided the initial impetus to appear in court is immaterial to his/her independent obligation as a citizen to testify truthfully.") Plaintiff was not provided any information prior to arriving at the IG's office to testify as to what the IG was

investigating. Defendant Green did not tell Plaintiff that she was required to testify, nor did the investigators from the IG's Office. Significantly, Defendants have articulated that the basis for Plaintiff's termination is her willingness to *volunteer opinion testimony* to the IG ██████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████

Moreover, the Employee Manual for DCJS addresses incidents of sexual harassment, racism, discrimination, and workplace violence. Peck Decl. Ex. "X". Therein resources and agencies to which complaints of this nature should be referred are listed. Id.  The Manual, however, is silent as to any requirement to report such matters to the Office of the Inspector General. Id.  At most, it requires workplace violence to be reported to an employee's supervisor – in this case Defendant Green. ████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████

ii.  *Plaintiff's testimony to the IG* ████████████████████████████

Defendants further attempt to characterize Plaintiff testimony before the IG as ██████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████

Indeed, this Court has already found that "the subject of Bianchi's sworn testimony to the OIG was a matter of public concern."  Dkt. 75 p. 11. The Court, after reviewing, Plaintiff's testimony before the IG found that:

████████████████████████████████████████████████████

████████████████████████████████████████████████████

i ████████████████████████████████████ ███████████████████████████████████████████████ ████████████████████████████████████████████████████████

The record that has been developed since this Court's decision at the Rule 12(b)(6) stage further supports this finding. At the time the Plaintiff testified before the IG, ████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████. In fact, much of the information that served as the basis of Plaintiff's testimony were the result of ████████ ████████████████████████████████████████████████████████████████████████████ ████████. Indeed, █████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ██████████████████████████████████. Essentially, this is a situation where the employer's policy and the employee's duties, as relayed to her by her direct supervisor, contravenes the black-and-white text of the statute. Simply, Plaintiff's testimony was ████████████████████ ████████████████. Further, the avenue in which Plaintiff spoke is available to anyone – whether a state employee or outside citizen. See, *Matthews v. City of New York*, 779 F.3d 167, 176 (2d Cir. 2015)(basing, in part, its holding that plaintiff was speaking as a citizen on that fact that there was a civilian analogue to the form of speech). To this end, t███████████████████████ ████████████████████████████████████████████████████████████████████████████ ██████████████████████. Peck Decl. Ex. "G" 105:9-22.

Moreover, the subjects of Plaintiff's testimony were a matter of public concern. To qualify as a matter of public concern the subject matter of the testimony must "relate to any

matter of political, social, or other concern to the community or when it is a subject of legitimate

news interest; that is, a subject of general interest and of value and concern to the public." *Lane*,

573 U.S. at 241.

Plaintiff testified that, 

. Peck Decl. Ex. "L" 15:2-22; 63:24-25

[2]

Peck Decl. Ex. "Y".  Plaintiff's act of

. *See*, *Caruso v City of New York*, 973 F Supp 2d

430, 448 (S.D.N.Y. 2013)(stating that "given the 'exceptional significance' of

truthful testimony in the courts' pursuit of justice, the Second Circuit has long held

that testimony of public employees in judicial or other fact-finding proceedings is protected by

the First Amendment") *internal citations omitted.*

---

[2] See, e.g.. *Fox News*; Mikelionis, Lukas (2017, May 31). 'New York State Agency Official Fired After Sexual Misconduct', https://www.foxnews.com/politics/new-york-state-agency-official-fired-after-sexual-misconduct-report - reports of conduct that had been reported to DCJS, similar to that of Mr. Gestring, with limited consequences to the appointed official.

The New Yorker also reported on the OFS investigation and DCJS's internal failing in addressing the atmosphere created by Brian Gestring.  Peck Decl. Ex."Y".

**B.  <u>Plaintiff's Termination Was Not Justified.</u>**

Defendants' arguments that ████████████████████████████████

██████████████████████████████. At this point, there is not

dispute that Plaintiff was terminated because ████████████████████████

███████████████████████████████████

██████████████████████████████████████████

█████████████████████████████

First, with respect to ██████████████████████████████

██████████████████████████. When asked whether she knew if ██████

███████████████████████████████████

████████████████████████████████████████

██████████████████████ Peck Decl. Ex. "M" 56:6-18. Plaintiff went on to repeat

██████████████████████ *Id.* 56:21-24 – 57:5-12. When Plaintiff was pressed, she

testified that ███████████████████████████████████

██████ Id. at 57:13-25-58:2-12.

Second, Defendants argue that ████████████████████████████

████████████████████████████████████". Czajka

MOL p. 16. This is a blatant mischaracterization of Plaintiff's testimony. Of note is that

Defendant Green does not claim that plaintiff lied in her testimony to the IG. Nor has the IG

found any instances in which Plaintiff misrepresented the truth or misled its investigators.

Indeed, the IG stands behind its investigation and the letter report it issued. Peck Decl. Ex. "G"

47:20-23; 56:8-9("like I said, we stood by our investigation.").

Plaintiff repeatedly stated in her testimony that █████████████████████

██████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████

     ███████████████████████████████████████
████████████████████

     ███████████████████████████████████████
███████████████████████████████████████
████████████████████████████

The pretext of this allegation is made abundantly clear by Defendants' own workplace climate investigation study. The investigation report authored by Sandra Van Kampen expressly stated that executive management at DCJS was ████████████████████████████████ ████████ Peck Decl. Ex. "R".  Ms. Van Kampen ████████████████████████████ ██████████████████████████████████████████████ ████████████████████████████████████ The investigation report also revealed that ████████████████████████████████████████ ████████████████████████████████████████ Id. Ultimately, Defendants appear to take issue with the fact that ██████████████████████ ████████████████████████████████████████████████ ████████████████████████████████. Id. Significantly, the report also notes that several of these complaints, though formally made in July and August of 2017, were not investigated until 3-4 months later, after ████████████████████████████████ ██████████████████. Id.

Further, whether Plaintiff reported the allegations ██████████████████████ ████████████████████ Plaintiff ████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████

9

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████

Defendant Green tries to argue that h█████████████████████████████████

██████. In reality, Defendant Green did not like t███████████████████ He did

not like that ████████████████████████████████████████████████████

███████████. It is clear from both Defendant Green's[3] statements to Plaintiff as well as Defendant

Czajka's notes on Plaintiff's testimony, that the real reason Plaintiff was terminated was ████████

██████████████████████████████████████████████████

████████████    Peck Decl. Ex. "O".  The record strongly supports a finding that the motivation

behind Defendants' termination of Plaintiff rests on a credibility determination that is within the

purview of a jury to decide.

C.  **The Record Establishes that Defendant Czajka was Personally Involved in Violating Plaintiff's Constitutional Rights.**

Defendant Czajka argues that he was not personally involved in violating her rights

because he did not have the authority to terminate her. However, while Defendant Czajka may

not have had the authority to terminate Plaintiff, ███████████████████████████

█████████████. I███████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████

---

[3] ███████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████



Peck Decl. Ex. "O".

Defendant Green testified that ████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████.

## POINT II: DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY

Generally, qualified immunity is available if a defendant's conduct did not violate a

plaintiff's clearly established statutory or constitutional rights or if it would have been objectively

reasonable for the official to believe that his conduct did not violate plaintiff's rights. *Mandell v.*

*Count of Suffolk*, 316 F.3d 368, 385 (2d Cir. 2003); *Nagle v. Marron,* 663 F.3d 100, 113-14 (2d

Cir. 2011). "Where specific intent of a defendant is an element of plaintiff's claim

under clearly established law, and plaintiff has adduced sufficient evidence of that intent to

defeat summary judgment, summary judgment on qualified immunity grounds is

inappropriate." *Id. internal citations omitted.* The "subjective good faith of government officials

plays no part in the inquiry." *Nagle v. Marron,* 663 F.3d 100, 114 (2d Cir. 2011) citing

 *Harlow,* 457 U.S. at 816, 102 S.Ct. 2727("inquiry is confined to the objectively ascertainable

question whether a reasonably well-trained [official] would have known that [his conduct] was illegal.").

"When determining if a right is clearly established, the Court must 'view the record most favorably to [the plaintiff]' and 'accept [his] account of the reason for his dismissal'" *Richardson v Pratcher*, 48 F Supp 3d 651, 663 (S.D.N.Y. 2014) quoting *Hawkins v. Steingut,* 829 F.2d 317, 319 (2d Cir.1987).

Where a defendant asserts an entitlement to qualified immunity on Pickering grounds, this Court analyzes the argument under the reasonableness prong of the qualified immunity test. Id. 48 F.Supp3d. at 663-64 citing *Pickering v. Brd. of Educ.*, 391 U.S. 563 (1968). "[I]f any reasonable trier of fact could find that the defendants' actions were objectively unreasonable, then the defendants are not entitled to summary judgment." *Id.*

## A. Plaintiff's Right to be Free From Retaliation for Providing Sworn Testimony Was Clearly Established.

Defendant Green argues that because of the Second Circuit's decision in *D'Olimpio*, Plaintiff's right to provide testimony to the OIG, namely that such testimony was outside of her official duties, was not clearly established. However, the *D'Olimpio* case did not involve testimony before the OIG, rather there the plaintiff filed a complaint which clearly fell within the requirement pursuant to Executive Law §55 to report to the OIG. It was not, as here, a matter of the plaintiff being asked to provide testimony in support of an OIG investigation. Indeed, Defendant's reading of the case law on this point is far too narrow. Rather, the Second Circuit has long made clear that the right to testify truthfully under oath is protected, even if the speaker is a public employee. Indeed, the Second Circuit has held that if the speech involves a matter of public concern and the employee is not responsible for the creating or effecting the policy upon which they are speaking, then the right is clearly established – and it has been since the Second Circuit's 2015 *Matthews* decision. *Matthews v. City of New York*, 779 F.3d 167, 172 (2d Cir.

12

2015); *see*, *Stajic v. City of New York*, 2018 WL 4636829, 19 (S.D.N.Y. 2018)(denying qualified immunity where the plaintiff's protected speech was via her membership on a governmental board).

Similar to the defendants in *Stajic*, Defendant Green argues that since there is no Supreme Court precedent finding that testimony before an IG is protected, he is entitled to qualified immunity. However, as discussed above, the Second Circuit's rational in *Matthews* applies to the circumstances at issue here. Plaintiff, while being a higher-level employee, did not make policy at DCJS, had no oversight or say over DCJS employees, and was specifically advised that OFS matters were outside the realm of her responsibilities.  Bianchi Aff. ¶26-27. Plaintiff's testimony ███████████████████████████████████████████

███████████████████████████████████████████████████████████████████

████████████. Peck Decl. Ex. "S".  Not only is this a right constitutionally protected, but it is also protected under NYS statutory law. Exec. L. §54. In addition to the U.S. Supreme Court's 2014 holding in Lane—that truthful testimony under oath and outside of ordinary job responsibilities is protected (*Lane v Franks*, at 14), Plaintiff's case falls squarely within the Second Circuit's holding in *Matthews*.

### B. Viewing the Record Most Favorably to Plaintiff, Questions of Facts Preclude Finding that Defendants Actions were Objectively Reasonable.

Where there is a dispute over "'the manner in which'" a speech was delivered, whether the speech 'had the potential to disrupt' a government function, and 'whether even if such disruption occurred, plaintiffs were in fact not dismissed because of the disruption but because of the content of their speech,' it is improper 'for the district court ... to resolve the factual disputes between the parties, or to decide the proper balance between the parties' interests.'" *Richardson*, 48 F.Supp.3d at 665 quoting *Gorman–Bakos v. Cornell Co-Op Ext. of Schenectady County*, 252

F.3d 545, 556–58, (2d Cir. 2001); *see also Mandell v. Cnty. of Suffolk,* 316 F.3d 368, 385 (2d Cir.2003) Here, qualified immunity turns on material facts genuinely in dispute.

As noted in Plaintiff's response to Defendants' Statement of Facts, and in her own Additional Disputed Facts, there is a genuine dispute over Defendants' motivation for terminating her. Defendants readily acknowledge that it was Plaintiff's testimony that resulted in her termination. However, where Defendants claim it was because the testimony was disruptive to operations, the record supports otherwise. Defendant Czajka ███████████████████████████ ████████████████████████████████████████████████████████ ███████. Defendant Green expressly told Plaintiff that █████████████████████████ ██████████████████████████████. Plaintiff also testified to the IG and expressed to Defendant Green that she did, in fact, ████████████████████████████ ███████████████████. Finally, Defendants' own workplace climate study investigation supports a finding that Plaintiff's testimony was not just based on pure speculation, but on OFS management level complaints that were also made to DCJS's HR Director and AAO Officer – and not promptly investigated. These facts support a finding that there are genuine disputes over whether Defendants' could reasonably believe that they were not, in fact, violating Plaintiff's rights when they terminated for her testimony.

Defendants claim that Plaintiff's testimony was disruptive to operations is clearly a pretext because her truthful sworn testimony was provided confidentially to the IG investigators on matters of public concern. Her testimony was not publicly broadcast to anyone within DCJS; it was the Defendants who disseminated her testimony, among others, to many in the agency. The Defendants are not entitled to qualified immunity because *Lane* clearly holds that "[t]ruthful testimony under oath by a public employee outside the scope of [one's] ordinary jo duties is speech as a citizen for First Amendment purposes. That is so even when the testimony relates to

[one's] public employment or concerns information learned during that employment," as here. *Lane v Franks*, at 9. Indeed the Supreme Court in *Lane* recognized that "when the person testifying is a public employee, he may bear separate obligations to his employer  * * * [b]ut any such obligations as an employee are distinct and independent from the obligation, as a citizen to speak the truth. That independent obligation renders sworn testimony speech as a citizen and sets it apart purely in the capacity of an employee. *Id.*, at  9.

## POINT III:   THERE ARE MATERIAL QUESTIONS OF FACT WHICH PRECLUDE DISMISSAL OF PLAINTIFF'S HUMAN RIGHTS LAW CLAIMS

"Although described as an 'unlawful discriminatory practice'...the HRL prohibits retaliation taken against anyone who complains of behavior prohibited under the statute." *Lore v. City of New York*, 583 F.Supp.2d 345, 376-77 (N.D.N.Y. 2008) *internal citations omitted.*  A supervisor will qualify as an "employer" under New York State Human Rights Law if the individual "actually participates in the conduct giving rise to the discrimination". *Friederick v Passfeed, Inc.,* 21-CV-2066 (RA), 2022 WL 992798, at *9 (S.D.N.Y. Mar. 31, 2022) *quoting Feingold v. New York*, 366 F.3d 138, 157 (2d Cir. 2004). Further, individual liability under the NYHRL results not from the definition of "employer," see N.Y. Exec. Law § 292(5), but from the provision making it "an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so." *Harrison v. SUNY Downstate Medical Center*, 2018 WL 4055278 at 7 (E.D.N.Y. 2018); N.Y. Exec. Law § 296(6); *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1317 (2d Cir. 1995). NYSHRL §296(7) further provides that "that it shall be unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has opposed any practices forbidden under this article". NYSHRL §297(7).

Courts analyze retaliation claims under the NYSHRL and Equal Protection clause, under federal employment anti-discrimination law, "a plaintiff-employee must demonstrate that (1) she engaged in protected activity; (2) the employer was aware of this activity; (3) the employer took adverse action against the employee[4]; and (4) a causal connection exists between the protected activity and the adverse action." *Hicks v. Baines,* 593 F.3d 159, 164 (2d Cir. 2010); *Feingold v New York*, 366 F3d 138, 157 (2d Cir 2004); *U.S. v. New York City Dept. of Educ.*, 407 F.Supp.3d 365, 402 (S.D.N.Y. 2018).  "Protected activity refers to action taken to protect or oppose statutorily prohibited discrimination".  *U.S. v. New York City Dept. of Educ.*, 407 F.Supp.3d at 402-03.

A.  **Plaintiff Engaged in Protected Activity under the Human Rights Law and Equal Protection Clause and Defendants Terminated Her for that Activity.**

   i.   *Plaintiff engaged in protected activity.*

The record establishes that ████████████████████████████████████

████████████████████████████████████████████████████████████████

█████████████████████   Peck Decl. Ex. "N".  Defendants attempt to minimize Plaintiff's testimony before the OIG to support their argument that Plaintiff's testimony ████████████████

████████████████████████████████████████████████████   However,

Plaintiff's testimony to the OIG ████████████████████████████████████

████████████████████████████████████████████████

████████████████████

Indeed, Plaintiff provided the following testimony:

- ████████████████████████████████████████████████
- ████████████████████████████████████████████████████
  ████████████

---

[4] Defendants have conceded that Plaintiff suffered an adverse employment action.



> ii. *Plaintiff was terminated because she provided testimony of agism and gender harassment and discrimination to the OIG.*

While retaliation must be a "but-for" cause of Plaintiff's termination, Plaintiff need not provide proof that the *only* cause for her termination was her testimony – only that she would not have been terminated in the absence of Defendants retaliatory motivation. *U.S. v. New York City Dept. of Educ.*, 407 F.Supp.3d at 402-03 *quoting Zan Kwan v. Andalex Group LLC* , 737 F.3d 834, 846 (2d Cir. 2013). "Proof of causation can be shown either: (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Gordon v. New York City Board of Education*, 232 F.3d 111, 117 (2d Cir. 2000). Retaliatory motive can be demonstrated by "weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nonretaliatory reasons for its actions." *U.S. v. New York City Dept. of Educ.*, 407 F.Supp.3d at 403 *quoting Zan Kwan v. Andalex Group LLC* , 737 F.3d 834, 846 (2d Cir. 2013).

In the instance case, there is both a temporal proximity between Plaintiff's testimony to the OIG, her interrogation about her testimony, and her termination, as well as documentary evidence and testimony that demonstrate "weaknesses," "inconsistencies," and "contradictions" in Defendants' alleged legitimate nonretaliatory basis for Plaintiff's termination. Defendant Czajka o█████████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████. The email focused on ████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████ Peck Decl.

Ex. "S".  ████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████

█████████████████████████████████ Peck Decl. Ex.

"H", P. 145:13-17; Bianchi Aff. Ex. "E". ███████████████████

██████████████████████████████████████████████

█████████████.

Further, as discussed at length above, Defendants claims that Plaintiff represented

hearsay as "fact" to the OIG, testified solely on speculation, and failed to report what she was

being told by OFS management are completely spurious. ████████████████████████

██████████████████████████████████████████████

█████████████████████████████ Moreover, the record

evidences that the basis for Plaintiff's testimony was known to Defendant Green at the time of

Plaintiff's termination – ████████████████████████████████████

███████████████████████████████████████████████

████████e. Plaintiff's testimony regarding ████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████ The
record clearly creates a question of fact that Defendants alleged "legitimate, nondiscriminatory"

reason for her termination is a pretext. See, e.g., *U.S. v. New York City Dept. of Educ.*, 407

F.Supp.3d at 409-410 (finding a question of fact where the record established "weakness and

inconsistencies" in defendants' explanations) *quoting Zann Kwan,* 737 F.3d at 847 ("[A] plaintiff

may rely on evidence comprising her prima facie case, including temporal proximity, together

with other evidence such as inconsistent employer explanations, to defeat summary judgment").

### B. Defendants Can Be Held Individually Liable under the Human Rights Law for Retaliation

i. *Doe v. Bloomberg* did not remove individual liability under the NYS HRL for supervisors who are actively involved in retaliation and discrimination.

The NYS Court of Appeals' determination in *Doe v. Bloomberg* holds that individuals

cannot be vicariously liable simply because of the supervisory or ownership position they hold in

a business. 36 N.Y.3d 450 (2021). There, the plaintiff alleged that her direct supervisor sexually

harassed and abused her. *Id.* 36 N.Y.3d at 453. She brought discrimination claims under NY City

HRL against her supervisor, her employer, *and* Michael Bloomberg individually. *Id.* Her claims

with respect to Michael Bloomberg were that he constituted an "employer" under NYC HRL and

could, therefore, be vicariously liable for the supervisor's conduct – even if he was not

personally involved. *Id.* The Court of Appeals affirmed the dismissal of the case against Michael

Bloomberg finding that "where a plaintiff's employer is a business entity, the shareholders, agents, limited partners, and employees of that entity are not employers within the meaning of the City HRL," and it held that such individuals could only be held liable under the City HRL "for their own discriminatory conduct, for aiding and abetting such conduct by others, or *for retaliation against protected conduct*" (Id., at 459 [emphasis supplied]).

In its analysis, the Court of Appeals noted that the City HRL, unlike its State counterpart, imposes vicarious liability on employers. *Id.* at 455. The City HRL did not define the term "employer" though and it was historically interpreted by the Courts to include individual shareholders and owners the business entity. The Court, in reaching its determination, analyzed the City HRL finding that the statute distinguished between employers, employees, agents, and owners. The Court noted that designating shareholders as employers for the purpose of imposing vicariously liability went against "the principals underlying the legal distinction between a company and its owners because the law permits the incorporation of a business for the very purpose of enabling its proprietors to escape personal liability". *Id.* at 461. The Court ultimately determined the "unique provisions of the City HRL"… "does not extend to individual owners, officers, employees or agents of a business entity."  *Id.* at 462

Significantly, the Court did not arrive at such a far-reaching conclusion as that proposed by the Defendants. Rather, its decision was limited to the City HRL and its imposition of vicarious liability for shareholders, owners, and employees of a business entity. While the Court of Appeals discussed the test used to define an "employer" under the state statute, the Court also noted and distinguished the state statute from the City HRL based on the fact that the State HRL does not allow for vicarious liability. *Id.* 455-56. The Court went on to note that the City HRL already had a provision that provided for primary liability on an "employee and agent" that "exercised managerial or supervisory responsibility" or actually committed the discriminatory

conduct.  *Id.* at 459-460. The fact that primary liability in these situations are expressly covered

in the statute serves as justifiable basis to limit the definition of an employer – particularly as it

impacts those that do not have such responsibilities or culpability. As the scope of the Court's

decision was limited to the City's HRL and its effect on business entities, the case should not be

extended to preclude an individual liability against a supervisor that has directly participated in

the discriminatory/retaliatory conduct. See, *Id.* at 460 (i.e. discussing the expectation of an

employee for being held vicariously liable when they have neither supervisory responsibilities

nor committed the wrongdoing). Nor should it be extended to hold that such a supervisor, like

Defendant Green, who had the ability to hire and fire Plaintiff, and who used that power to

retaliated against Plaintiff cannot be considered an "employer" under the state HRL. See, i.e.

*Friederick v Passfeed, Inc.,* 21-CV-2066 (RA), 2022 WL 992798, at *9 (S.D.N.Y. Mar. 31,

2022)

      i.   *Defendant Green is individually liable for retaliation under NYS HRL 296(1) and (7).*

      Under the NYSHRL "individual liability ... is limited to cases where an individual

defendant . . . actually participates in the conduct giving rise to the plaintiff's retaliation claim."

*Friederick v Passfeed, Inc*., 21-CV-2066 (RA), 2022 WL 992798, at *9 (S.D.N.Y. Mar. 31,

2022) citing *Malena Victoria's Secret Direct, LLC*, 886 F Supp 2d 349, 361 (S.D.N.Y. 2012). A

person also may be liable if he is found to have "aid[ed], abet[ted], incite[d], compel[led] or

coerce[d] the doing of any of the acts forbidden under this [provision], or to attempt[ed] to do

so." N.Y. Exec. Law § 296(6).  For the purposes of establishing liability, a supervisor is an

"employer" if they actually participated in the retaliatory conduct."  *Feingold v New York*, 366

F3d 138, 157 (2d Cir 2004).

      As discussed above, Defendant Green qualifies as Plaintiff's employer because he had

the power to hire and fire her, and directly participated in the retaliatory conduct. See,

*Friederick*, 2022 WL 992798, at \*9; see also, *Feingold*, 366 F.3d at 157; Peck Decl. Ex. "J"

228:8-17 (discussing that it was Defendant Green's decision as to whether to terminate plaintiff

"she [plaintiff] belonged to him [Mike Green]").

 Defendant Czajka is also liable under a theory that he "aided, abetted, and incited"

Defendant Green in retaliating against Plaintiff. Defendant Czajka ███████████████

███████████████████████████████. Defendant Czajka admitted that h████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████. Peck Decl.

Ex. "O". While Defendant Czajka claims that ████████████████████████

████████████████████████████████████

████████████████████ Peck Decl. Ex. "I" p. 160:17-23. (Defendant Czajka

provided his objections to Defendant Green without being asked); 161:22-23 (Defendant Green

reviewed Defendant Czajka's objections to Plaintiff's testimony). The review of ██████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████. Further, despite claims to the contrary, ████████

████████████████████████████████████████████

██████████████████████████████████████████. Peck

Decl. Ex. "I" 100:20-23. ████████████████████████████

████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

███████████████████

### iii.  *Defendants are also personally liable under NYS HRL 296(7)*

Plaintiff's Amended Complaint expressly stated a cause of action for retaliation in violation of New York State Human Rights Law. While Plaintiff contends that the Court of Appeals decision in *Doe v. Bloomberg*, is not as far reaching as Defendant argues, NYS HRL §296(7) still allows for individual liability in retaliation causes of action. NYS Exec. L. § 296(7); *Friederick v Passfeed, Inc.,* 21-CV-2066 (RA), 2022 WL 992798, at *12 (S.D.N.Y. Mar. 31, 2022). As discussed in Point (A) and (B)(ii) *supra*, the record amply supports a finding that Defendants violated NYS HRL prohibition against retaliation.

It is expected that Defendants will argue that Plaintiff cannot raise individual liability under §297(7) because the section was not specifically referenced in Plaintiff's Amended Complaint, the Court should permit Plaintiff's Complaint to be deemed amended to add reference to this section.  Rule 15(b) of the Federal Rules of Civil Procedure provide for amendments to the pleadings during and after trial to conform to the proof. *Rockland Exposition, Inc. v. All. of Auto. Serv. Providers of New Jersey*, 894 F.Supp.2d 288, 336 n.44 (S.D.N.Y. 2012) (collecting cases); see also *Cruz v. Coach Stores. Inc*., 202 F.3d 560, 569–70 (2d Cir. 2000), superseded by statute on other grounds.

In this case, there can be no claim of prejudice as Plaintiff clearly identified her cause of action as one for individual liability for retaliation under NYS HRL. Section 296(7) is the section of the statute that expressly speaks to claims of retaliation. "The function of the pleadings is to

give opposing parties notice of the facts on which the pleader will rely, and, in the absence of

prejudice to the opposing party, the court may allow the pleadings to be amended to conform

them to the evidence at any time, even after judgment." *Van Alstyne v. Ackerley Grp., Inc.*, 8

Fed. App'x 147, 154-55 (2d Cir. 2001). "Thus, an issue raised for the first time in a motion for

summary judgment may start the amendment process." *In re: Kern*, 567 B.R. 17, 28 (Bankr.

E.D.N.Y. 2017) (citing *In re Bennett Funding Group, Inc.*, 220 B.R. 743, 752-53 (Bankr.

N.D.N.Y. 1997). Thus, if the Court finds that Plaintiff did not properly plead a retaliation claim

under §296(7), Plaintiff request that the Court permit a final amendment of the Complaint to

reference NYS HRL's specific retaliation subdivision §296(7).

**POINT IV: DEFENDANT CZAJKA'S REQUEST FOR ATTORNEY'S FEES IS
DESIGNED TO INTIMIDATE AND CHILL FREE SPEECH AND SHOULD BE
DENIED.**

Under 42 USC 1988(b), prevailing defendants are entitled to attorney's fees very rarely

*Sista v. CSC Ixis N. Am., Inc.,* 445 F.3d 161, 178 (2d Cir. 2006), and courts "must be extremely

cautious in [awarding attorneys' fees to prevailing defendants] to avoid chilling the vital ability

of persons who believe that they are victims of discrimination to seek recourse," *Franchitti v.

Bloomberg, L.P.,* 411 F. Supp. 2d 466, 468 (S.D.N.Y. 2006). Only when a plaintiff's claim is

frivolous, unreasonable, or groundless, or the plaintiff continued to litigate after it clearly became

so is a defendant entitled to attorney's fees (*Parker v. Sony Pictures Ent.*, Inc., 260 F.3d 100, 111

(2d Cir. 2001) (emphasis supplied and alterations omitted). "A claim is frivolous where it lacks

an arguable basis in either law or in fact." *Shakur v. Selsky*, 391 F.3d 106, 113 (2d Cir. 2004)

(citation and quotations omitted). Moreover, "the determination as to whether the claims were

frivolous, unreasonable, or groundless requires an evaluation of the allegations and the proof in

light of the controlling principles of substantive law." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d

765, 770 (2d Cir. 1998).

Importantly, in considering whether a prevailing defendant is entitled to attorneys' fees, the Supreme Court has said that a district court must "resist the understandable temptation to engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, h[er] action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success." *Belton v. Borg & Ide Imaging, P.C.*, No. 18-CV-6776L, 2022 WL 398824, at *4 (W.D.N.Y. Feb. 10, 2022) quoting *Christiansburg Garment Co.,* 434 U.S. at 421-22 ; *Franchitti v. Bloomberg, L.P.,* 411 F. Supp. 2d 466, 468 (S.D.N.Y. 2006) (stating that courts "must remain acutely aware that claims of discrimination in the workplace often can be difficult to prove, even where discrimination actually has occurred, and that an award of attorneys' fees to a prevailing defendant in such a case usually will not be warranted").

The record demonstrates that Plaintiff's claims against Defendant Czajka are not frivolous. Defendant Czajka chose to demand Plaintiff's testimony from the OIG, pick apart her testimony and document where she criticized DCJS for its lack of action to employee complaints, and provide that to Defendant Green to assist him in an interrogation and ultimately retaliatory conduct. The fact that Defendant Czajka was counsel to the agency does not insulate him from unlawful conduct. Indeed, Defendant Czajka should have known that what was being done was illegal and he should have taken action to stop it, not aid it. An award of attorney's fees would serve only to emphasize the conduct already taken by the Defendants to chill Plaintiff's and all State employees First Amendment rights.

## **CONCLUSION**

Based upon the foregoing, Defendants Motions for Summary Judgment should be denied in their entirety, along with such other and further relief the Court deems just and necessary.